**In re UNITED STATES LEATHER, INC., Debtor.**

**United States Leather, Inc., Plaintiff,**

**v.**

**City of Milwaukee, Defendant.**

**Bankruptcy No. 00–21375.
Adversary No. 01–2556.**

United States Bankruptcy Court,
E.D. Wisconsin.

Dec. 20, 2001.

Bruce G. Arnold, Milwaukee, WI, for plaintiff.

Beverly A. Temple, Milwaukee, WI, for defendant.

## AMENDED MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

M. DEE McGARITY, Bankruptcy Judge.

### INTRODUCTION

On May 7, 2001, the debtor, United States Leather, Inc., commenced this adversary proceeding against the City of Milwaukee, seeking a declaratory judgment that certain prepetition obligations of the debtor for the payment of water and sewer charges are unsecured claims pursuant to 11 U.S.C. § 545(2). In its answer, the city denied the debtor's allegations and asserted that the prepetition charges were a lien upon the debtor's property at the time the services were incurred pursuant to §§ 92.69(2)(f), 66.0717 and 66.0809(2), Wis. Stats.

The debtor subsequently filed a motion for summary judgment pursuant to Fed. R.Bankr.P. 7056. The parties reached an agreement on the total amount of the prepetition and postpetition obligations of the debtor for payment of water and sewer charges on the subject properties. The debtor and the city have agreed that the issue whether the prepetition charges are unsecured or secured claims is solely an issue of law, subject to summary determination by the court.

The debtor asserts that the city's lien rights with respect to the prepetition water and sewer charges were not perfected under applicable Wisconsin law as of the petition date and, accordingly, are unsecured claims of the city. The city asserts that, under applicable Wisconsin law, the prepetition charges were perfected as of the petition date and, accordingly, are secured claims of the city.

### UNDISPUTED MATERIAL FACTS

The debtor commenced its reorganization case by filing a petition for relief under chapter 11 on February 22, 2000. The debtor has continued in possession of its property, operated its business, and conducted its liquidation as a debtor in possession.

Prior to the petition date, the debtor incurred the following charges from the city for water and sewer use at its properties:

| | |
|---|---:|
| 1531 North Water Street | $ 432.00 |
| 605–621 South 12th Street | $ 316.29 |
| 1237 West Bruce Street | $ 22.89 |
| 1635 North Water Street | $256,329.66 |
| 2300–2324 West Cornell Street | $ 4,557.77 |
| Total | $262,258.61 |

The debtor did not pay the prepetition charges to the city on or before the petition date. The property located on West Cornell Street was sold free and clear of all liens and encumbrances pursuant to an order of this court dated September 26, 2000. The other properties were sold free and clear of liens or were in the process of being sold in the current calendar year.[1]

On or about November 1, 2000, the prepetition charges were placed upon the city's tax roll for calendar year 2000. Thereafter, the prepetition charges were listed on the city's combined property tax bill for calendar year 2000 and were made payable with the real estate taxes assessed against the subject properties for calendar year 2000.

### DISCUSSION

Motions for summary judgment are governed by Fed.R.Civ.P. 56, which is incorporated into bankruptcy practice by Fed. R.Bankr.P. 7056. That rule provides in part that a motion for summary judgment

---

1. The city withdrew its objection to the sale of the Water Street properties with the understanding that the city did not waive, release or compromise, in any way, its claim for tax liens, including water and sewer charges.

is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed. R.Bankr.P. 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The parties have stipulated that the issue whether the prepetition charges are unsecured or secured claims is an issue of law, subject to summary determination.

■■■■ Section 545(2) empowers the debtor in possession to avoid the fixing of any statutory lien attaching to its properties under Wisconsin law to the extent the lien was not perfected or enforceable on the petition date against a hypothetical bona fide third party purchaser of the properties as of the petition date. This power is not without limitation. The trustee's avoiding power cannot be exercised if state law provides that a party who acquires rights in the property before perfection nevertheless takes the property subject to the perfected interest; that is, state law provides for retroactive perfection which supercedes the rights of an intervening bona fide purchaser. 11 U.S.C. § 546(b). The lien must be in existence before the petition is filed and perfected thereafter, and applicable state law must clearly provide for retroactive perfection. This provision is to be narrowly construed. *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.,* 884 F.2d 80, 85 (3rd Cir.1989). The question before this court is whether Wisconsin law provides that delinquent water use charges that were not yet on the tax rolls as of the date

of filing constitute an interest in property that is not subject to the debtor-in-possession's avoiding powers. If the law so provides, the prepetition water charges are a lien which must be paid out of the proceeds of sale; if not, the claim is paid with other unsecured claims of the same priority.

On the petition date, § 66.071, Wis. Stats.,[2] governed water service charges by the City of Milwaukee. Section 66.071(1)(e) provides, in pertinent part:

> All water rates for water furnished to any building or premises, and the cost of repairing meters, service pipes, stops or stop boxes, shall be a lien on the lot, part of lot or parcel of land on which such building or premises shall be situated. If any water rates or bills for the repairing of meters, service pipes, stops or stop boxes remain unpaid on the first day of October, in any year, the same shall be certified to the city comptroller of such city on or before the first day of November next following, and shall be placed by the comptroller upon the tax roll and collected in the same manner as other taxes on real estate are collected in said city. . . .

Wis.Stat. § 66.071(1)(e) (1997–1998).

The debtor contends that § 66.071(1)(e), Wis.Stats., does not establish a lien for the prepetition charges as of the date they first accrued. By its terms, § 66.071(1)(e), Wis.Stats., does not afford the city any retroactive perfection of a lien for the prepetition charges because the lien did not arise until the charges were placed on the city's tax roll for calendar year 2000—after the petition date.

---

2. Effective January 1, 2001, § 66.071, Wis. Stats., was amended and renumbered as § 62.69, Wis.Stats., by 1999 Wisconsin Act 150. Similarly, § 66.069(1), Wis.Stats., was

amended and renumbered as § 66.0809, Wis. Stats. The court will analyze the 1997–1998 versions of the applicable statutes, which were in effect on the date of the petition.

The city counters that § 66.071, Wis. Stats., does not state that the lien for unpaid water and sewer charges arises when the same is placed upon the tax roll, as asserted by the debtor, but rather provides that all water rates *"shall* be a lien" on the land. It interprets this phrase to mean that the lien arises when the charges are incurred, not at some time in the future, and that the remainder of the statute deals only with how the existing lien is recorded and collected.

Section 66.069(1)(b), Wis.Stats., governed public utility charges on the date of the petition and provides, in part

[O]n October 15 in each year notice shall be given to the owner or occupant of all lots or parcels of real estate to which utility service has been furnished prior to October 1 by a public utility operated by any town, city or village and payment for which is owing and in arrears at the time of giving such notice. The department in charge of the utility shall furnish the treasurer with a list of all such lots or parcels of real estate, and the notice shall be given by the treasurer, unless the governing body of the city, village or town shall authorize such notice to be given directly by the department. Such notice shall be in writing and shall state the amount of such arrears, including any penalty assessed pursuant to the rules of such utility; that unless the same is paid by November 1 thereafter, a penalty of 10% of the amount of such arrears will be added thereto; and that unless such arrears, with any such added penalty, shall be paid by November 15 thereafter, the same will be levied as a tax against the lot or parcel of real estate to which utility service was furnished and for which payment is delinquent as above specified. Such notice may be served by delivery to either such owner or occupant personally, or by letter addressed to such owner or occupant at the post-office address of such lot or parcel of real estate. On November 16 the officer or department issuing the notice shall certify and file with the clerk a list of all lots or parcels of real estate, giving the legal description thereof, to the owners or occupants of which notice of arrears in payment were given as above specified and which arrears still remain unpaid, and stating the amount of such arrears together with the added penalty thereon as herein provided. Each such delinquent amount, including such penalty, shall thereupon become a lien upon the lot or parcel of real estate to which the utility service was furnished and payment for which is delinquent, and the clerk shall insert the same as a tax against such lot or parcel of real estate. All proceedings in relation to the collection of general property taxes and to the return and sale of property for delinquent taxes shall apply to said tax if the same is not paid within the time required by law for payment of taxes upon real estate. . . .

Wis.Stat. § 66.069(1)(b) (1997–1998).

The debtor argues that § 66.069(1)(b), Wis.Stats., merely establishes a mechanism by which the prepetition charges could become a lien against the properties; it does not establish a lien for the prepetition charges as of the date they first accrued. The express language of § 66.069(1)(b), Wis.Stats., anticipates that the earliest date by which the prepetition charges could become a lien against the properties was November 16, 2000, and, according to the debtor, does not afford the city any retroactive creation or perfection of a lien. The owner has until November 1 of the year incurred to pay the charges, and until November 15 to pay the charges plus a penalty, and "thereafter, the same will be levied as a tax against the

lot or parcel of real estate to which utility service was furnished and for which payment is delinquent as above specified." Furthermore, the provision that, "[e]ach such delinquent amount, including such penalty, shall *thereupon* become a lien ..." means that no lien arises until the account is delinquent, the appropriate authorities are notified, and the delinquency is recorded.

The debtor further points out that, in contrast, general real estate taxes become a lien against real estate when they are levied. Section 70.01, Wis.Stats., provides as follows:

> Taxes shall be levied, under this chapter, upon all general property in this state except property that is exempt from taxation. Real estate taxes and personal property taxes are deemed to be levied when the tax roll in which they are included has been delivered to the local treasurer under s. 74.03. When so levied such taxes are a lien upon the property against which they are charged. That lien is superior to all other liens, except a lien under s. 292.31(8)(i) or 292.81, and is effective as of January 1 in the year when the taxes are levied....

Wis.Stat. § 70.01. The liens excepted by the statute are not relevant in this context.

Real estate taxes are deemed levied when the tax roll for a given calendar year is delivered to the municipal treasurer. *Id.* Then, the lien for real estate taxes so levied is *retroactively* effective as of January 1 in the calendar year such taxes are levied. *Id.* The debtor points out that § 70.65, Wis.Stats., which provides for the preparation of the tax roll, distinguishes between real estate taxes levied against property and other charges, such as delin-

quent water use charges: "The tax roll shall ... [w]ith respect to each description of real property and each owner of taxable personal property: 1. Show the total amount of taxes levied against the property by all taxing jurisdictions to which the property is subject. 2. Show all other taxes, assessments and charges against the property which are authorized by law to be collected as are taxes levied against property." Wis.Stat. § 70.65(2)(b). According to the debtor, real and personal property taxes are expressly afforded retroactive perfection, whereas delinquent water use charges are not. While water and sewer charges might be collected in the same manner as taxes, they do not *become* taxes.

The debtor thus contends that the prepetition charges would not have been afforded lien status under either § 66.071(1)(e), Wis.Stats., or § 66.069(1)(b), Wis.Stats., until November 2000—more than eight months after the petition date. Because the prepetition charges were not perfected liens against the debtor's properties as of the petition date, a bona fide purchaser could take the property free of a lien on the petition date, even though a buyer might find that a lien is placed on the property thereafter.[3] Therefore, the debtor asserts the charges are avoidable under 11 U.S.C. § 545(2). Similarly, since the lien was not in existence at the time of the petition, and state law does not deem it as such thereafter, the lien is not preserved by 11 U.S.C. § 546(b).

The city responds by arguing that § 66.07(1)(e), Wis.Stats., is not merely a mechanism by which the charges could become a lien against the properties, but rather provides that all water rates "*shall*

---

**3.** However, the perfection of this lien by placement on the tax rolls might be considered an act done in violation of the automatic stay. *See In re Shoreham Paper Co.,* 117 B.R. 274 (Bankr.W.D.Mich.1990).

be a lien." The statute does not state that the lien for such damages arises when the same is placed upon the tax roll, as the debtor contends. According to the city, the lien for water and sewer charges becomes a tax at the point when the clerk "insert[s] the same as a tax against such lot or parcel of real estate." Wis.Stat. § 66.069(1)(b). In other words, the city interprets these statutes to mean that water use charges are a lien when they are incurred, but they are a tax when they are entered on the roll. The tax roll is then delivered to the local treasurer pursuant to § 74.03, Wis.Stats.

Pursuant to § 70.01, Wis.Stats., the real estate and personal property taxes are deemed levied when the tax roll is delivered to the local treasurer and when so levied are a lien upon the property, which is effective as of January 1 in the year the taxes are levied. The city reasons that all taxes, assessments and charges against the property thus comprise the "taxes" against the real estate. Although the inclusion of the prepetition charges was not accomplished until they were placed upon the tax roll in November 2000, the tax roll lien was effective as of January 1, 2000, which predated the filing of the debtor's petition. Once the charges could be defined as a tax, they were entitled to retroactive perfection as are taxes.

One might think that statutory construction would be greatly simplified now that the "plain meaning" rule is the accepted protocol. That rule does not work well in this case, as both sides have presented cogent and persuasive interpretations of the same statutes and have arrived at opposite meanings and effects. Wisconsin courts have been unhelpful, indeed silent, in interpreting when and how the city's interest attaches. Complicating the problem is the fact that we have a number of statutes to harmonize with each other as well as to the agreed facts, and we do not want to interpret multiple applicable statutes in a way that would make any of them contradictory, redundant or absurd. Sometimes cases interpreting similar statutes in other states might provide a useful analogy, but the cases cited by the parties, which we were not able to expand by our own research, do not provide a clear answer.

For example, the city cites *Graffen v. City of Philadelphia*, 984 F.2d 91 (3rd Cir.1992), and *Maryland Nat'l Bank v. Mayor and City Council of Baltimore*, 723 F.2d 1138 (4th Cir.1983), in support of its position that the charges are a prepetition perfected lien upon the debtor's property. In *Graffen*, the Third Circuit held that the city's water lien was perfected under Pennsylvania's law at the time the debtors filed for chapter 13 relief so as to have been enforceable against a bona fide purchaser. The issue was whether the lien, which was posted in the city's "Water/Sewer in Rem Judgment Index" as of the date of filing, was effective against a bona fide purchaser, even though it was not in an all-inclusive judgment index. *Graffen*, 984 F.2d at 93–96. The debtor argues that this is not even remotely analogous to the statutory mechanism in Wisconsin for creation and perfection of a lien for unpaid water charges, and the debtor is correct. If anything, the case supports the debtor's argument that a statutory lien that has not been posted anywhere is subject to avoidance, as the Third Circuit had held in a prior case under the same Pennsylvania law. *See McLean v. City of Philadelphia*, 891 F.2d 474 (3rd Cir.1989) (lien not appearing in either judgment index was avoidable).

In *Maryland Nat'l Bank*, the Fourth Circuit held that the trustee could not avoid the imposition of the city's real property tax lien which became due and pay-

able after the mortgage recording date and after the date of the chapter 11 filing. Under Maryland law, no entity could prevent the eventual perfection of the lien; therefore, the city was entitled to the perfection and priority the then-arising lien afforded. *Maryland Nat'l Bank,* 723 F.2d at 1141–43.

The debtor responds that the *Maryland Nat'l Bank* case is inapposite to the issues before this court because the Fourth Circuit based its decision on express provisions of Maryland law giving priority of payment on sale to real estate taxes, even if the taxes were not yet due and payable at the time of sale. *Id.* at 1142. The debtor reiterated that no such retroactive perfection applies to unpaid water charges under either §§ 66.069(1)(b) or 66.071(1)(e), Wis.Stats.

The debtor is correct that this case is not analogous to the case at hand. The parties in *Maryland Nat'l Bank* had agreed that under Maryland law, water charges and taxes were entitled to exactly the same treatment. *Id.* at 1140, n. 1. The parties in this case have no such agreement. Wisconsin real estate taxes are undoubtedly entitled to retroactive perfection under § 70.01, Wis.Stats., and cannot be avoided, but the dispositive issue is whether water charges can be avoided.

The debtor cites *In re Shoreham Paper Co.,* 117 B.R. 274 (Bankr.W.D.Mich.1990), to support its cause, but the applicable Michigan Statute did not provide for retroactive perfection of tax liens. The petition was filed before the lien arose. This does not help us. Similarly, *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.,* 884 F.2d 80 (3rd Cir.1989), interpreting West Virginia law, dealt with the retroactive perfection of real estate taxes and personal property taxes. The West Virginia statute gave a date for retroactive perfection, as the Wisconsin statute does, and perfection

of the personal property taxes required distraint by the sheriff. No analogy to water use charges appears. Finally, *In re United Construction and Dev. Co.,* 140 B.R. 573 (D.Utah 1992), interpreting Utah law, also dealt with real estate taxes, and no analogy to water use taxes appears.

All of this searching brings us right back to the Wisconsin statutes, which indeed allow for interpretation that does not render any of them contradictory, redundant or absurd. Section 66.069(1)(b), Wis. Stats., provides that notice of unpaid water charges will be sent to the owner, and unless they are paid by November 1, or unless they are paid by November 15 with a 10% penalty, *"thereafter,* the same will be levied as a tax against the lot or parcel of real estate to which utility service was furnished. . . . Each such delinquent amount, including such penalty, shall *thereupon* become a lien . . ." (emphasis added). This court is satisfied that the prepetition charges could not become a lien until November 16 of the year they were incurred, and that date was after the filing of the petition. Thus, the charges were not a lien on the date of filing, and any purported lien on the real estate sold by the debtor-in-possession can be avoided.

This court's interpretation of § 66.069(1)(b), Wis.Stats., is not inconsistent with § 66.071(1)(e), Wis.Stats., providing that water charges *"shall be* a lien on the lot." The lien arises in the future after the charges are unpaid, notice is given, and the city comptroller places them on the tax rolls. It is not inconsistent with § 70.01, Wis.Stats., which treats real estate taxes differently and affords them retroactive perfection to January 1 of the year levied. . Likewise, it is not inconsistent with § 70.65(2)(b), Wis.Stats., which provides that a tax bill set out real estate taxes and other charges separately. Once

the charges are on the tax bill, the charges may, of course, be collected in the same manner as the real estate taxes, because by that time the charges constitute a perfected lien, and this does not run afoul of this court's interpretation.

Therefore, the court grants the debtor/plaintiff's motion for summary judgment, and the city's lien for prepetition water and sewer charges is avoided. A separate order consistent with this opinion was entered.